TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00278-CR






Christopher Lynn LeBlue, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT

NO. 61833, HONORABLE JOE CARROLL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury convicted Christopher Lynn LeBlue of engaging in organized criminal activity. 
See Tex. Penal Code Ann. § 71.02 (West Supp. 2009). Punishment was assessed at 60 years'
imprisonment. LeBlue asserts that the trial court erred by 1) admitting evidence of his prior
convictions; 2) allowing the jury to consider uncorroborated accomplice testimony; and 3) failing
to instruct the jury that certain witnesses qualified as accomplices. See Tex. Crim. Proc. Code Ann.
art. 38.14 (West 2005) (accomplice testimony must be corroborated). We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND

 The jury heard evidence that on April 21, 2007, LeBlue pulled up to a drive-through
bank in Killeen, Texas with two other people--Warren Singer, who sat in the passenger seat, and
Lacey Higgins, who sat in the back seat directly behind LeBlue. LeBlue pulled forward so that
Higgins had access to the pneumatic tube connecting the drive-through station to the bank teller. 
Higgins placed a forged check and stolen identification card into the tube. The check belonged to
a woman named Brenda N. Brown and was made payable to a woman named Michelle Williams. 
Higgins placed Williams's stolen identification in the tube along with the forged check, apparently
hoping to pass for Williams so that the teller would allow her to cash the check.

 The teller became suspicious because Higgins did not resemble the photograph on
Williams's identification. The teller called her supervisor, who remembered that the same car,
driven by the same person, had been involved in a similar attempt to pass a forged instrument the
previous day. (1) As a result, bank employees called the police and then stalled. The teller testified that
after a while, LeBlue became agitated and told her through the intercom system that he was late for
work. When the police arrived, they arrested LeBlue, Singer, and Higgins and searched their car. 
In addition to drug paraphernalia, they found a backpack in the car that contained stolen checks,
deposit slips, and identifications. (2) The arresting officer testified that during the course of the arrest,
LeBlue stated he was unemployed.

 Based on the April 21 incident, a grand jury indicted LeBlue for engaging in
organized crime with a predicate offense of forgery. See Tex. Penal Code § 71.02. The indictment
alleged two prior felony convictions for enhancement purposes. LeBlue pleaded not guilty, and his
jury trial commenced in March 2008.

 During the trial, Lacey Higgins testified that LeBlue knowingly participated in her
April 21 attempt to pass a forged check. Bank employees and the arresting officer also testified
about the events of April 21. The trial court later instructed the jury that because Higgins was
LeBlue's accomplice, her testimony required corroboration. See Tex. Crim. Proc. Code art. 38.14.

 In addition to Higgins, the State called several witnesses who testified that they knew
LeBlue personally and that LeBlue had been involved in multiple forgery attempts besides the
April 21 incident. During the jury-charge colloquy, the parties and the court discussed whether these
other witnesses qualified as accomplices whose testimony required corroboration. The trial court
ultimately did not instruct the jury that these witnesses qualified as accomplices, and LeBlue did not
object to the omission of such an instruction from the jury charge.

 During its case-in-chief, the State introduced evidence that LeBlue had two prior
forgery convictions. LeBlue took the stand and admitted those convictions. He also admitted
involvement in the extraneous forgery attempts described by witnesses other than Higgins. He
claimed, however, that he did not know Higgins was attempting to pass a forged check on April 21.

 The jury found LeBlue guilty of engaging in organized crime by forgery for the
April 21 incident, and it sentenced him to 60 years' imprisonment. LeBlue subsequently appealed.


STANDARD OF REVIEW

 We review trial court rulings on the admissibility of evidence for abuse of discretion. 
Carrasco v. State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will uphold a trial court's
determination on the admissibility of evidence if it is reasonably supported by the record and correct
under any applicable legal theory. Id.

 When reviewing the sufficiency of the evidence corroborating accomplice testimony,
we "eliminate the accomplice testimony from consideration and then examine the remaining portions
of the record to see if there is any evidence that tends to connect the accused with the commission
of the crime." Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quotation marks
omitted). Sufficient corroborating evidence need not itself prove the defendant guilty beyond a
reasonable doubt, but it must link the defendant "in some way to the commission of the crime and
show that rational jurors could conclude that this evidence sufficiently tended to connect [the
accused] to the offense." Id. (quotation marks omitted). While mere presence at the scene of a crime
does not constitute corroboration, "[p]roof that the accused was at or near the scene of the crime at
or about the time of its commission, when coupled with other suspicious circumstances, may tend
to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." 
Id. (quotation marks omitted). Each case must ultimately be judged on its own facts. Id.

 In reviewing whether a trial court erred by omitting an accomplice-witness instruction
from a jury charge, we first ask whether the omission was error. See Almanza v. State, 686 S.W.2d
157, 171 (Tex. Crim. App. 1984). If the omission was error and the defendant timely objected, we
will reverse unless the error was harmless. Id. If the omission was error but the defendant did not
timely object, we will reverse only if the error was so egregiously harmful that it deprived the
defendant of a fair trial. Id. "The difference in harm standards impacts how strong the
non-accomplice evidence must be for the error in omitting an accomplice witness instruction to be
considered harmless." Herron v. State, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).


DISCUSSION

 LeBlue raises three issues. We will address them in turn.


First Issue: Whether the Trial Court Erred by Admitting Evidence of LeBlue's Prior Convictions

 LeBlue argues that the trial court should not have admitted evidence of his two prior
forgery convictions. The State argued that the prior convictions were admissible because they
suggested that LeBlue knew Higgins was attempting to pass a forged check on April 21 and intended
and planned to aid her. See Tex. R. Evid. 404(b) (evidence of prior convictions admissible to show
knowledge, intent, or plan). The trial court admitted LeBlue's prior convictions on those bases and
instructed the jury not to consider them for any other reason. LeBlue argues that even though
knowledge, intent, and plan are generally legitimate bases for admitting prior convictions, admitting
his prior forgery convictions here was prejudicial and insufficiently probative because "the State did
not attempt to prove[] the specifics of the prior offenses. Instead, [it] merely prove[d] the
conviction[s] [by introducing the Judgments of Conviction]. Thus, the jury was left to guess whether
the prior convictions were similar to the instant offense." (3) 

 LeBlue cites Birl v. State, 763 S.W.2d 860, 861 (Tex. App.--Texarkana 1988, no
pet.), for the proposition that prior convictions must bear certain similarities to a charged offense,
"such as proximity in time or place or common mode," before they are sufficiently probative to be
admissible. LeBlue argues that such similarity was not demonstrated here. He also argues that
evidence of his prior convictions was redundant given that the State "already had introduced several
other extraneous [forgery] offenses" through witness testimony. Finally, he argues that he was
harmed because "[w]ithout evidence of the prior convictions, the evidence against [him] would have
been far less compeling [sic]."

 LeBlue is correct that prior convictions must be probative to be admissible. See Tex.
R. Evid. 403. We ultimately give wide deference to trial court determinations on the admissibility
of evidence, however, and we will not overturn such determinations as long as they fall "within the
zone of reasonable disagreement." Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). 
Given the facts of this case, we cannot say the trial court abused its discretion by admitting evidence
of LeBlue's prior forgery convictions. The State introduced the convictions only after LeBlue
repeatedly suggested, through cross-examinations, that he did not know Higgins was trying to pass
a forged check on April 21. (4) By pursuing this tack, LeBlue clearly placed his knowledge and intent
at issue, and the State was entitled to present evidence on the matter. See Bradshaw v. State,
65 S.W.3d 232, 236 (Tex. App.--Waco 2001, no pet.) ("When a defendant claims his act was free
from criminal intent, extraneous offenses are relevant to prove guilty intent."); Robinson v. State,
844 S.W.2d 925, 929 (Tex. App.--Houston [1st Dist.] 1992, no pet.) (State may use extraneous
offense to rebut defensive theory). Furthermore, after the State introduced the evidence of LeBlue's
prior convictions, LeBlue took the stand and directly testified that he did not know Higgins was
attempting to pass a forged check on April 21. Regardless of what evidence preceded it, this
testimony put LeBlue's knowledge, intent, and plans directly at issue. (5) Thus, even if the trial court
originally erred in admitting evidence of LeBlue's prior convictions, that error was cured when
LeBlue took the stand and testified as to his knowledge and intent. See Daggett v. State, 187 S.W.3d
444, 454 (Tex. Crim. App. 2005) ("[I]f extraneous offense evidence is improperly introduced during
the State's case-in-chief, any error may be cured by the defendant's subsequent testimony which
'opens the door' to rebuttal."). We overrule LeBlue's first issue.


Second Issue: Whether the Trial Court Erred by Allowing the Jury to Consider Uncorroborated
Accomplice Testimony


 The trial court properly instructed the jury that Higgins was an accomplice
whose testimony required corroboration. See Tex. Crim. Proc. Code art. 38.14. LeBlue argues that
sufficient corroboration was not provided. Specifically, he argues that (1) all the other witnesses
who testified about his criminal activities were themselves accomplices, so their testimony could not
corroborate Higgins's, and (2) other than that accomplice testimony, the evidence linking him to the
charged offense merely showed that he was present at the scene.

 LeBlue is correct that accomplice testimony cannot be corroborated solely by other
accomplice testimony. See Aston v. State, 656 S.W.2d 453, 454 (Tex. Crim. App. 1983). He is also
correct that corroborating evidence is insufficient if it merely places the accused at the scene of a
crime. Malone, 253 S.W.3d 253, 257. But even if we assume that all the relevant witnesses were
indeed accomplices, Higgins's testimony about the April 21 incident was still sufficiently
corroborated by other evidence.

 It is well established that "sufficient accomplice-witness corroboration may be
furnished by the suspicious conduct of a defendant." Brown v. State, 270 S.W.3d 564, 568 (Tex.
Crim. App. 2008). Suspicious conduct may include "[t]he presence of the accused in the company
of the accomplice near the time of the offense." Killough v. State, 718 S.W.2d 708, 711 (Tex. Crim.
App. 1986) (en banc). Here, LeBlue was not merely present at the scene when Higgins broke the
law; he drove Higgins to the scene and remained in the car with her, speaking to her intermittently,
while she attempted to pass the forged check. In addition, a bank employee testified that LeBlue,
driving the same car he was driving on April 21, had attempted to pass a forged instrument at the
bank's drive-through on April 20 and had driven off before the transaction was completed. Another
bank employee testified that on April 21, after she began stalling, LeBlue became agitated and stated
that he was late for work. The officer who arrived on the scene and arrested LeBlue a short time
later testified that LeBlue stated he was unemployed. These facts far exceed the requirement of
"some non-accomplice evidence that tends to connect appellant to the commission of the offense
alleged in the indictment." Brown, 270 S.W.3d at 568. That is to say, these facts clearly constitute
evidence of "suspicious conduct" by LeBlue sufficient to corroborate Higgins's testimony. We
overrule LeBlue's second issue.


Third Issue: Whether the Trial Court Erred by Failing to Instruct the Jury that Certain Witnesses
Were Accomplices Whose Testimony Required Corroboration


 Finally, LeBlue argues that the trial court erred by failing to instruct the jury that
certain witnesses besides Higgins qualified as accomplices whose testimony had to be corroborated. 
At the jury-charge conference, the parties and the court explicitly discussed whether such an
instruction was appropriate. LeBlue ultimately neither requested such an instruction nor objected
when the jury charge was submitted without one. Thus, the omission of the instruction is reversible
error only if it was so egregiously harmful that it deprived LeBlue of a fair trial. See Almanza,
686 S.W.2d at 171.

 Even if we assume that the individuals in question were LeBlue's accomplices and
that omitting a corroboration instruction was therefore error, the omission was not egregiously
harmful. As discussed above, the jury heard incriminating evidence from many sources other than
the witnesses who may have been accomplices. (6) For example, the jury heard from Higgins (whose
testimony was, as discussed above, corroborated by evidence other than the testimony of those
witnesses); from bank employees and police officers; and, perhaps most importantly, from LeBlue
himself, who admitted previous forgery convictions, admitted involvement in the extraneous
offenses discussed by the witnesses, and admitted driving Higgins to the bank on April 21. These
facts show that the trial court's failure to issue a corroboration instruction was not egregiously
harmful. See id. (degree of harm caused by jury-charge omission is assessed in light of overall state
of evidence). We overrule LeBlue's third issue.


CONCLUSION

 For the reasons stated above, we affirm the trial court's judgment.


 __________________________________________

 David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: June 24, 2010

Do Not Publish
1. That attempt, like the April 21 attempt, involved a woman sitting in the back seat of
LeBlue's car and trying to pass a forged instrument using a stolen identification. Bank employees
stalled after becoming suspicious, and LeBlue drove off before the transaction was completed.
2. The backpack was hanging on the passenger seat. 
3. LeBlue continues:


There is no way to determine whether appellant actually passed the forged item in the
prior cases, or whether he [merely] acted as a party. Additionally, it is not known
whether the prior cases involved a check, or some other document. The only
evidence is that appellant was previously convicted of forgery, which is the same
offense he was on trial for. Appellant suggests that under the facts of this case, it
would be impossible to limit the prejudicial effect of such evidence.
4. LeBlue made this suggestion several ways. First, he elicited testimony from Higgins that
she never saw LeBlue in possession of the items she passed to the bank teller; that she personally
passed the items to the teller; and that she got the items from Warren Singer. Second, LeBlue
elicited testimony from the bank teller that Higgins, not LeBlue, passed the stolen check and
identification to her. Third, LeBlue elicited testimony from the arresting officers that Warren Singer
admitted to owning the contents of the backpack that was found in LeBlue's car. 
5. It also arguably rendered all of LeBlue's prior felony convictions, including his forgery
convictions, admissible for impeachment purposes. See Tex. R. Evid. 609(a). 
6. We also note that the witnesses did not testify about LeBlue's involvement in the April 21
incident; rather, they testified about his involvement in extraneous offenses.